## 25-11449

# United States Court of Appeals
*for the*
# Eleventh Circuit

JACOB MARULLO,

*Plaintiff/Appellant,*

— v. —

RIVIAN AUTOMOTIVE, LLC, RIVIAN AUTOMOTIVE, INC.,
WASSYM BENSAID, in his individual and
professional capacities,

*Defendants/Appellees,*

JOHNNY DEUTSCH, in his individual and
professional capacities

*Defendant.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
CASE NO: 3:23-cv-00030-TCB
(Hon. Timothy C. Batten)

# OPENING BRIEF OF APPELLANT

LAWRENCE M. PEARSON
WIGDOR LLP
85 5th Avenue, Floor 5
New York, New York 10003
(212) 257-6800

*Counsel for Plaintiff/Appellant*

CHRISTOPHER B. HALL
HALL & LAMPROS, LLP
300 Galleria Parkway, Suite 300
Atlanta, Georgia 30339
(404) 876-8100

*Counsel for Plaintiff/Appellant*

CP COUNSEL PRESS    (800) 4-APPEAL • (JOB 381889)

**Marullo v. Rivian Automotive, LLC, et al.**

**No. 25-11449**

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Cir. R. 26.1-1, 26.1-2(a), and 26.1-3, Plaintiff-Appellant Jacob Marullo provides the following Certificate of Interested Persons and Corporate Disclosure Statement:

Deutsch, Johnny, (Dismissed) Defendant

Hall, Christopher B., Esq., Counsel for Appellant

Hart, Daniel P., Esq., Counsel for Appellees

Holladay, Brian, Esq., Counsel for (Dismissed) Defendant Johnny Deutsch

Martenson Hasbrouck & Simon LLP, Counsel for (Dismissed) Defendant Deutsch

Marullo, Jacob, Appellant

Pearson, Lawrence M., Esq., Counsel for Appellant

Rivian Automotive, Inc. ("RIVN"), Appellee

Rivian Automotive, LLC, Appellee

Robertson, Christopher, Esq., Counsel for Appellees

Sarah B. Affel, Esq., Counsel for Appellees

Seyfarth Shaw LLP, Counsel for Appellees

Treco, Matthew D., Esq., Counsel for (Dismissed) Defendant Deutsch

Wassym Bensaid, Appellee

Wigdor LLP, Counsel for Appellant

**<u>Marullo v. Rivian Automotive, LLC, et al.</u>**
**No. 25-11449**

Appellant certifies that he is not aware of any other entities with an interest

in the outcome of this case, including subsidiaries, conglomerates, or affiliates

Dated: June 25, 2025

By: <u>/s/ *Lawrence M. Pearson*    </u>
Lawrence M. Pearson
*Counsel for Plaintiff-Appellant*

C-2

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellant Jacob Marullo requests oral argument.  This appeal follows the grant of summary judgment against Marullo, and the issues in the case are fact-intensive and would benefit from a discussion of specific evidence and analogous case law under the still-evolving precedent under the Sarbanes-Oxley Act. Therefore, Marullo believes oral argument will assist the Court's resolution of this appeal.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ...................................................i

TABLE OF AUTHORITIES ....................................................................................iv

JURISDICTIONAL STATEMENT ..........................................................................1

STATEMENT OF ISSUES .......................................................................................1

STATEMENT OF THE CASE AND RELEVANT FACTS ......................................2

    I.    Plaintiff's Employment at Rivian and Initial Verbal Complaints to His Supervisor ............................................................2

    II.    Marullo Reports Deutsch's Improper Conduct with Vendors and Retaliation to HR, While Deutsch Was Lobbying Bensaid and HR to Fire Marullo ............................................................4

    III.    Defendants Attempt to Retaliate against Marullo During the Investigation of His Complaint, But Ultimately Hold Off Until After the Company's Investigation, Which Partially Substantiates Marullo's Concerns ..............................................9

RELEVANT PROCEDURAL HISTORY ..............................................................16

STANDARD OF REVIEW, ELEMENTS OF SOX CLAIM ................................16

SUMMARY OF THE ARGUMENT .....................................................................17

LEGAL ARGUMENT ...........................................................................................19

    I.    Plaintiff Made Complaints Protected by SOX ...................................19

        A.    Marullo's Protected Complaints Reasonably Related to Suspected Fraudulent Conduct by Deutsch .............................19

        B.    Plaintiff's Complaint Identified Fraud as the Basis for Coverage of His Protected Activity Under SOX ......................23

C.      Protected Complaints Are Not Required to "Definitively and Specifically" Relate to Enumerated Laws Under SOX, or to Allege Wrongdoing by the Company Itself— Kickbacks and the Like Are Fraud, Including Under SOX ...................................................................................25

II.    WHETHER MARULLO WOULD HAVE BEEN TERMINATED IN JANUARY 2022 ABSENT HIS PROTECTED ACTIVITY IS UNCERTAIN AND DISPUTED, NOT "CLEAR AND CONVINCING"— ANIMUS BY SUPERVISORS TAINTED THE TERMINATION, WHICH WAS DISCUSSED IN OCTOBER 2021 BUT CARRIED OUT IN JANUARY 2022 SOON AFTER THE INVESTIGATION.............................................35

CONCLUSION .................................................................................44

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986) ..................................................................................16

Bickerstaff v. Vassar Coll.,
  196 F.3d 435 (2d Cir. 1999),
  as amended on denial of reh'g (Dec. 22, 1999) ....................................................40

Boyland v. Corrections Corp. of America,
  390 F. App'x 973 (11th Cir. 2010)..................................................................36

Burns v. Medtronic, Inc.,
  No. 8:15 Civ. 2330 (EAK),
  2016 WL 3769369 (M.D. Fla. July 12, 2016)....................................................28

Colesanti v. Dickinson,
  No. 18 Civ. 491 (WES),
  2019 WL 4043957 (D.R.I. July 19, 2019)........................................................29

Collins v. Beazer Homes USA, Inc.,
  334 F. Supp. 2d 1365 (N.D. Ga. 2004) ........................................................ 28, 42

Del Signore v. Nokia of Am. Corp.,
  672 F. Supp. 3d 560 (N.D. Ill. 2023)..............................................................36

FindWhat Inv. Group v. FindWhat.com,
  658 F.3d 1282 (11th Cir. 2011) ................................................................ 16, 17

Gale v. U.S. Dep't of Lab.,
  384 F. App'x 926 (11th Cir. 2010)............................................................. 17, 27

Hampton v. Amediys Georgia, LLC,
  2023 WL 1521983 (11th Cir. Jan. 11, 2023)....................................................38

Highsmith v. CSN Transp., Inc.,
  5:22 Civ. 52 (LGW),
  2024 WL 3164660 (S.D. Ga. June 24, 2024)................................................. 35, 39

Johnson v. Stein Mart, Inc.,
  440 F. App'x 795 (11th Cir. 2011)..................................................................17

iv

Jones v. City of Heflin,
    207 F. Supp. 3d 1255 (N.D. Ala. 2016) ....................................................39

Kuba v. Disney Financial Services, LLC,
    623 F. Supp. 3d 1290 (M.D. Fla. 2022) ........................................... 41, 42

Lawson v. FMR LLC,
    571 U.S. 429 (2014) ..................................................................................27

Lockheed Martin Corp. v. Admin. Rev. Bd., U.S. Dept. of Labor,
    717 F.3d 1121 (10th Cir. 2013) .................................................................39

MAZ Partners LP v. First Choice Healthcare Sols., Inc.,
    No. 19 Civ. 619 (LRH),
    2019 WL 5394011 (M.D. Fla. Oct. 16, 2019)..........................................34

Morris v. Broadwing Comm'ns,
    2006 WL 964487 (D. Ariz. April 11, 2006)..............................................38

Nielsen v. AECOM Tech. Corp.,
    762 F.3d 214 (2d Cir. 2014) .....................................................................26

Pan Am Rys., Inc. v. U.S. Dep't of Lab.,
    855 F.3d 29 (1st Cir. 2017) ......................................................................35

Reyna v. ConAgra Foods, Inc.,
    506 F. Supp. 2d 1363 (M.D. Ga. 2007)....................................................28

Rhinehimer v. U.S. Bancorp Invs., Inc.,
    787 F.3d 797 (6th Cir. 2015) ...................................................................26

Riddle v. First Tenn. Bank, Nat'l Ass'n,
    497 F. App'x 588 (6th Cir. 2012)........................................................ 25, 26

Ronnie v. Office Depot, LLC,
    81 F.4th 1345 (11th Cir. 2023)....................................... 19-20, 21, 25

Sequeira v. KB Home,
    716 F. Supp. 2d 539 (S.D. Tex. 2009)......................................................42

Slawin v. Bank of Am. Merch. Servs.,
    491 F. Supp. 3d 1334 (N.D. Ga. 2020) ....................................................26

Smith v. Chicago Bridge & Iron Co., N.V.,
    2017 WL 2619342 (S.D. Tex. June 16, 2017) .........................................39

Staub v. Proctor Hosp.,
    562 U.S. 411 (2011) ...........................................................................39

Stone & Webster Eng'g Corp. v. Herman,
    115 F.3d 1568 (11th Cir. 1997) .......................................................35

Thomas v. Tyco Int'l Mgmt. Co.,
    416 F. Supp. 3d 1340 (S.D. Fla. 2019).............................................36

Thomas v. Tyco Intl. Mgmt. Co., LLC,
    262 F. Supp. 2d 1328 (S.D. Fla. 2017)...................................... 28, 34

United States v. Bradley,
    644 F.3d 1213 (11th Cir. 2011) .......................................................31

United States v. Hasson,
    333 F.3d 1264 (11th Cir. 2003) .......................................................33

United States v. Maxwell,
    579 F.3d 1282 (11th Cir. 2009) ............................................ 31, 32, 33

United States v. Ward,
    486 F.3d 1212 (11th Cir. 2007) .......................................................31

**Statutes & Other Authorities:**

18 U.S.C. § 1343 .................................................................... 30, 31

18 U.S.C. § 1514A .......................................................... 1, 20, 25, 26

18 U.S.C. § 1514A(a)(1).......................................................... 19, 27

28 U.S.C. § 1291 ........................................................................1

28 U.S.C. § 1331 ........................................................................1

29 C.F.R. § 1980.103(e)(1)...............................................................17

29 C.F.R. § 1980.103(e)(2)...............................................................17

116 Stat. 802 § 806 ....................................................................27

Plaintiff-Appellant Jacob Marullo ("Marullo" or "Plaintiff") respectfully submits this brief in support of his appeal of the March 26, 2025 Order of U.S. District Court, Chief Judge Timothy C. Batten, Sr. of the Northern District of Georgia, dismissing his whistleblower retaliation action under the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A ("SOX") in its entirety and granting the motion for summary judgment of Defendants-Appellees Rivian Automotive, LLC, Rivian Automotive, Inc. (together, "Rivian" or the "Company") and Wassym Bensaid ("Bensaid") (collectively, "Defendants").

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction pursuant to 18 U.S.C. § 1514A and 28 U.S.C. § 1331. This Court's jurisdiction is based upon 28 U.S.C. § 1291, as an appeal from a final decision of the District Court entered on March 26, 2025. The decision granted Defendants-Appellees' motion for summary judgment and dismissed this action in its entirety. Plaintiff's Notice of Appeal regarding the District Court's March 26, 2025 decision was timely filed on April 25, 2025.

## STATEMENT OF ISSUES

1.    Whether the lower court erred in granting Defendants-Appellees' motion for summary judgment.

2.    Whether the lower court erred in determining as a matter of law that Plaintiff-Appellant Marullo did not engage in legally protected activity under SOX.

1

3.      Whether the lower court erred in determining as a matter of law that Marullo's protected activity was not a contributing factor in Defendants-Appellees' decision to terminate his employment and/or that Defendants-Appellees established through clear and convincing evidence that Marullo would have been terminated in the absence of his protected activity.

**STATEMENT OF THE CASE AND RELEVANT FACTS**

**I.      Plaintiff's Employment at Rivian and Initial Verbal Complaints to His Supervisor**

Plaintiff-Appellant Jacob Marullo began working at Rivian as the Operational Technologies Security Lead on September 21, 2020.  ECF 40 at 4, ¶ 10.  From the start of his employment until January 7, 2022, Marullo reported to Johnny Deutsch ("Deutsch"), who was Senior Director and Chief Information Officer.  ECF 40 at 4, ¶ 12.  Marullo was supervised by Deutsch's supervisor, Senior Vice President of Software Development Wassym Bensaid ("Bensaid") from January 7, 2022 (after Deutsch's January 7, 2022 termination) until Bensaid terminated Marullo on January 28, 2022.  Id. – Pgs 5-7 (¶¶ 13, 15, 17, 23-25); ECF 47 – Pgs 3, 6, 113 (¶¶ 205, 213, 447).[1]

---

[1]      Unless otherwise noted, citations to paragraphs contained in Plaintiff's Response to Defendants' Local Rule 56.1 Statement of Material Facts, ECF 40, and Defendants' Response to Plaintiff's Statement of Additional Material Facts, ECF 47, refer to both the proffered fact and the subsequent response.

In or around June 2021, Marullo lodged multiple verbal complaints and objections with his supervisor Deutsch directly and personally regarding his fraudulent conduct with vendors, signing up vendors based upon his personal relationships with them and the kickbacks and/or other benefits he would receive, while he was purportedly contracting with vendors in the best interests of Rivian. ECF 34-4 – Pgs 21-22, 30 (76:24-77:6, 77:24-78:8, 110:2-22), 76;  ECF 40 – Pgs 20-22 (¶¶ 65, 67), 25-26 (¶ 80), 28 (¶ 91),  34 (¶ 111); ECF 47 – Pgs 14 (¶ 236), 17 (¶ 243),  22, (¶256), 23-24 (¶ 259) 30 (¶ 272).  Marullo made  these complaints and objections to Deutsch because of the apparent personal benefits Deutsch was reaping, at the expense of the Company, which should be contracting with the vendors best suited to the Company's needs.  ECF 40 – Pgs 20-22 (¶¶ 65, 67), 48 (¶ 149); ECF 254 – Pgs 21 (¶ 254), 23 (¶ 258).  Marullo also observed and objected to various improper advantages Deutsch was attempting to confer on his personal connections, including sharing confidential information collected from other vendors who were competing to sign contracts with the Company.  ECF 40 – Pgs 18-19 (¶ 59) (Marullo alleging that Deutsch shared confidential information with a vendor), 25-26 (¶ 80) (report substantiating Marullo's allegation) .

Deutsch obviously was aware of Marullo's mid-2021 verbal complaints which were made to him personally, and he had started exhibiting animus and retaliating against Marullo well before Marullo filed an HR complaint in October 2021.  ECF

3

40 – Pgs 11-12 (Response to ¶ 35), 16 (¶ 48); ECF 47 – Pgs 25 (¶ 261), ; ECF 34-5 – Pg 16 (56:9-57:11), 17 (58:12-14).  Deutsch retaliated against Marullo before October 2021 by pressuring and berating him regarding his military reserve service and interfering with his work after Marullo objected to Deutsch's conduct with vendors.  ECF 40 – Pgs 18-19 (¶ 59) (Marullo's October 5, 2021 ethics complaint); ECF 47 – Pgs 25 (¶ 262) (Deutsch reprimanding Marullo for taking military leave), 34 (¶ 282) (same), 51-52 (¶ 315), 71 (¶ 351) (same), ECF 41-9 – Pg 8 (Deutsch negatively noting that he soured on Marullo after he had begun "acting like he was taking notes for a lawyer").

## II.    Marullo Reports Deutsch's Improper Conduct with Vendors and Retaliation to HR, While Deutsch Was Lobbying Bensaid and HR to Fire Marullo

On October 5, 2021, Marullo reported to HR in a written ethics complaint that his supervisor Deutsch was engaging, among other things, "in unethical business practices involving improper personal relationships with suppliers who have been awarded non-competitive sole source contracts" and had forced him to use a specific vendor for whom Deutsch had worked in the past despite it having a conflict of interest with Rivian.  ECF 34-4 – Pgs 22-23 (81:2-24, 82:19-84:13), 74; ECF 40 – Pg. 18 (¶¶ 57-59); ECF 47 – Pgs 33-34 (¶¶ 279-280), 36-37 (¶ 287), 38-39 (¶ 291). Marullo "firmly believe[d]" that this fraudulent, unethical conduct by Deutsch in contracting for his own benefit (i.e., kickbacks) did or would harm Rivian by

4

awarding contracts to vendors who "don't meet the Company's requirements and who are probably more expensive and possibly [involving] foreign interests" and therefore was defrauding the Company. ECF 34-4 – Pg 32 (119:18-120:6).

Marullo also documented in the October 5 complaint Deutsch's animus and already in-progress retaliation against him, including being reprimanded for his military leave, disparaging him to suppliers, directing Marullo to remove his accomplishments from performance documents, and refusing to consider him for promotion. ECF 40 – Pgs 18-19 (¶ 59); ECF 47 – Pg 34-35 (¶ 282). Marullo testified that these actions by Deutsch and his turning against Marullo were in retaliation for pushing back against his improper practices with vendors. ECF 40 – Pgs 18-19 (¶ 59), 60 (¶ 179); ECF 47 – Pgs 118-119 (¶462).

In the meantime, unbeknownst to Marullo, on October 1, 2021 Deutsch asked HR to begin a search to replace Marullo and contacted his supervisor Bensaid about Marullo's purported performance issues. ECF 40 – Pgs 7-8 (¶ 28, 29), 10 (¶ 32), 12 (response to ¶ 36); ECF 47 – Pg 47 (¶ 352). This was an escalation of Deutsch's retaliation against Marullo following his June 2021 objections and opposition to Deutsch's fraudulent conduct, and Deutsch admitted that he began to view Marullo negatively after his verbal complaints. ECF. 40 – Pg 9 (response to ¶ 31). Indeed, Deutsch told an investigator after Marullo's written complaint that, "I [Deutsch] don't know what happened with [Marullo]. He was performing and then he started

5

acting like he was taking notes for a lawyer," demonstrating his retaliatory animus against Marullo and the negative change in his view of Marullo as an employee because of his complaints. ECF 41-9 – Pgs 7-8 (2021 investigatory interview notes for Deutsch). The next day, October 2, 2021, Deutsch started preparing documents regarding Marullo's purportedly poor performance, which he sent to HR on October 4. ECF 35-2 – Pg 13 (¶ 15); ECF 40 – Pg 8 (¶ 30).

Both Deutsch and Bensaid were aware of Marullo's ethics complaint—Bensaid told Deutsch that Marullo had raised complaints about him internally in early October 2021. ECF 47 – Pgs 44 (¶ 301), 92-93 (¶ 400); ECF 34-5 – Pg 209. Bensaid, Deutsch, and the HR/Legal team handling Marullo's complaint all knew of Marullo's complaint, and certainly Bensaid and Deutsch undisputedly knew of Marullo's written complaint about Deutsch no later than when they were interviewed about it. ECF 34-5 – Pgs 16 (56:9-57:11), 17 (58:12-14); ECF 34-8 – Pg 8 (22:19-23); ECF 34-9 – Pgs 18-19 (65:3-66:2, 67:7-12), 63-66 (HR/Legal team knowledge); ECF 40 – Pgs 20 (¶ 61), 23 (¶ 69, 70); ECF 47 – Pgs 40 (¶ 294), 47 (¶ 363), 66 (¶ 66), 78 (¶ 366). The record shows Bensaid and Deutsch had knowledge of Marullo's HR complaint in October 2021, well before they were interviewed for the investigation. For example, HR's repeated warnings to Bensaid and Deutsch that they could not fire Marullo because it would risk a retaliation claim show they were aware of an HR/Legal complaint by Marullo against Deutsch (who was already

6

aware of Marullo's earlier complaints and objections to him about his fraudulent conduct). ECF 34-4 – Pg 41-42 (155:24-156:9, 157:24-158:22), 83-84 (Marullo complaining to Deutsch over email about Deutsch's interference with vendors); ECF 34-5 – Pg 20 (70:9-13) (Deutsch had no reason to believe Marullo had complained about anyone else at Rivian); ECF 34-8 – Pg 8 (22:19-23) (investigators sharing details about the complaint with individuals they interview); ECF 40 – Pgs 14-15 (¶¶ 43, 44); ECF 47 – Pg 79 (¶ 368) (Bensaid warning Deutsch not to retaliate against Marullo). Deutsch admitted at deposition that once he learned Marullo had made a complaint, he had no reason to believe it was about anyone other than himself. ECF 34-5 – Pg 20 (70:9-13). At a minimum, the Company's HR/Legal team, Bensaid, and Deutsch all had full knowledge of the nature of Marullo's complaint by the end of November 2021. ECF 34-5 – Pg 16 (54:3-8, 55:9-20); ECF 41-9 – Pgs 2-8; ECF 41-8 – Pg 2-4.

During October 2021, Deutsch was lobbying frantically for Marullo's termination, as confirmed by multiple defense witnesses, and he did so urgently after he learned Marullo had lodged an official complaint against him. ECF 34-6 – Pg 14 (48:15-20), 14 (51:5-11); ECF 40-2 – Pg 3; ECF 41-8 – Pg 2. Bensaid told the Company's investigator that Deutsch was vehement about the need to fire Marullo, and HR representatives confirmed that Deutsch wanted to fire Marullo during the investigation of Marullo's complaint despite a lack of any documentation of

7

supposed performance problems.  ECF 40 – Pgs 39-41, ¶ 127 (Deutsch sent repeated emails to HR and Legal and told HR he wanted to "terminate [Marullo] without any documentation . . . I am hesitant especially after [Deutsch] sent that email that may come off as retaliatory, and also lack of documentation if we termed [based] on performance/compass. Wassym and johnny are both pushing for termination asap" – October 7, 2021 email by HR rep, to which Legal responded, "jeez"); ECF 40 – Pgs 39-41 (response to ¶ 127); ECF 47 – Pgs 82 (¶ 375), 91 (¶ 397), 92 (¶ 399); ECF 34-9 – Pgs 51-52.

In his investigatory interview, Bensaid admitted that around the time Marullo filed his complaint (or after he learned Marullo had done so), Deutsch shifted from planning for Marullo's termination sometime in the future to pestering Bensaid and HR about firing Marullo immediately in October 2021. ECF 34-5 – Pgs 36 (135:2-10), 37 (138:23-139:12, 140:22-141:12), 216, 217, 220; ECF 34-9 – Pgs 51-52 (HR writing that on October 7, 2021 Deutsch was demanding termination of Marullo even without performance documentation, with Bensaid supporting Deutsch); ECF 40 – Pgs 39-41 (response to ¶ 127); ECF 40-2 – Pg 3 (Deutsch to Bensaid: "I wanted to ensure I still have your support of my original plan seeing as HR isn't responding to my question"); ECF 47 – Pg 113 (¶ 447).

**III.    Defendants Attempt to Retaliate against Marullo During the Investigation of His Complaint, But Ultimately Hold Off Until After the Company's Investigation, Which Partially Substantiates Marullo's Concerns**

Bensaid, who had no knowledge of Marullo's performance before hearing from Deutsch, was soured on Marullo by Deutsch and quickly wrote him off and concluded based on what he was hearing from him that Marullo should be terminated at the right time.  ECF 40 – Pgs 11-12 (response to ¶ 35, ¶ 36), 49 (¶ 153), 55-58 (¶¶ 171, 172, 173); ECF 47 – Pgs 10 (¶ 226), 79 (¶ 368), 91 (¶ 397).  Deutsch's retaliatory animus, criticism and actions against Marullo tainted Bensaid's view of Marullo and his decision to terminate Marullo shortly after the end of the investigation.  Bensaid also testified that he had negative feelings about Marullo's "many" complaints, and that he believed having Marullo there "was not very healthy." ECF 34-7 – Pg 13 (167:12-24).  Bensaid called Marullo "toxic" because of his complaints and discussed firing Marullo with HR even before an investigation into a follow-on retaliation complaint by Marullo had finished.  ECF 34-7 – Pg 11 (156:14-24, 158:7-18), 13 (166:13-167:11), 42.  Therefore, Bensaid was both tainted by Deutsch's animus and harbored his own retaliatory animus against Marullo specifically tied to his complaints.

Marullo reported to HR and/or Legal on October 17, 2021 and again in early November 2021 that he was being retaliated against for his complaints and the ensuing investigation, including Deutsch blocking his job candidates and interfering

9

with Marullo's contractor relationships and budget (showing that the retaliation by Deutsch ramped up after his written complaint), as well as strong pressure by a senior director of HR and Rivian's chief labor and employment counsel to force him into a less-desirable job not in line with his expertise (while apparently leaving Deutsch in his position). ECF 40 – Pgs 42-44 (¶¶ 129-136); ECF 47 – Pg 90 (¶ 393), 94-95 (¶¶ 404-406); ECF 34-7 – Pg 13 (164:7-25). This retaliatory attempt to sideline Marullo and set him up for later termination was expressly tied to Marullo's complaint and the "tension" between Marullo and Deutsch connected to the ongoing investigation, which cements Defendants' retaliatory motive in their actions against Marullo. ECF 40 – Pgs 41-42 (response to ¶ 130); ECF 47 – Pgs 93-95 (¶¶ 402-407), 106 (¶ 431); ECF 34-4 – Pgs 56 (217:7-23), 94; ECF 40-3 – Pg 3; ECF 34-9 – Pg 9 (26:14-27:14).

Defendants' assertions regarding Marullo's performance are alternately vague, disputed, and not supported by record evidence, such as assertions that Marullo did not play well with others (a euphemism for Marullo raising bothersome complaints) and was somehow blocking processes that he did not have the power or authority to stop (Defendants repeatedly belittled Marullo as not having a separate budget or team of his own). ECF 40 – Pgs 12-13 (¶¶ 37-40), 16 (¶ 49) (Marullo lacking power to block manufacturing processes), 20 (¶ 63), 39-40 (¶ 153). The record demonstrates that Marullo indisputably had various significant achievements

10

in less than 18 months of work at Rivian.  ECF 34-6 – Pgs 26-27 (97:4-98:23), 28 (103:9-15, 104:13-17) (Marullo successfully implemented security controls on plant's battery line), 29 (107:25-108:18); ECF 34-7 – Pg 18 (examples of Marullo allowing and/or facilitating progress on major cybersecurity changes or initiatives); ECF 40 – Pgs 9-10 (responses to ¶¶ 31) (detailing Marullo's success at Rivian, positive feedback from Deutsch and company stakeholders, preventing cybersecurity incidents, and good relationships with colleagues), 50 (response to ¶ 155) (Bensaid and Deutsch acknowledging Marullo's qualifications), 55-58 (¶¶ 171-173) (Bensaid acknowledging Marullo's facilitation of cybersecurity initiatives, negative performance assessment was pretext for retaliatory termination); ECF 47 – Pgs 116 (¶ 457) (detailing Marullo's contributions towards cybersecurity at Rivian), 117 (¶¶ 458-460) (Marullo not receiving negative feedback or reason for termination), 124 (¶ 469) (same).  Further, HR pointed out that Deutsch had no documentation of performance problems by Marullo to justify firing him in October 2021, and believed it was necessary to build a record against him to support termination later (seriously calling into question any sudden performance explanations proffered by Bensaid).  ECF 34-9 – Pg 51; ECF 40 – Pgs 39-41 (response to ¶ 127); ECF 47 – Pg 8-9 (¶¶ 220-223) (Marullo never put on performance improvement plan or given formal warning about risk of termination).  A supposed "failure to collaborate" by Marullo is a transparent euphemism and

11

doublespeak for him being viewed as troublesome and a risk to Rivian due to his protected complaints. ECF 40 – Pgs 11-12 (response to ¶ 35); ECF 47 – Pg 121 (¶ 466).

Marullo also was never put on a performance plan, and was fired only two days after Bensaid presented his first substantive performance feedback to Marullo on or around January 26, 2022. ECF 40 – Pgs 54-55 (¶¶ 168, 171); ECF 34-6 – Pg 8 (25:6-8); ECF 34-8 – Pg 29 (109:9-15). Again, Deutsch admitted to an investigator that his views of Marullo's performance turned negative after when Marullo started objecting to his conduct with vendors, saying "I [Deutsch] don't know what happened with [Marullo]. He was performing and then he started acting like he was taking notes for a lawyer." ECF 40 – Pgs 9-10 (response to ¶ 31); ECF 41-9 – Pg 8.

The investigation of Marullo's complaint was not complete until at least December 16, 2021, pushing out the date after which the Company could be expected to look to terminate him without it looking like blatant retaliation. ECF 40 – Pg 23 (¶ 71); ECF 47 – Pg 57 (¶ 322). Importantly, the Company's investigation confirmed that some of Marullo's complaints were partially substantiated, and Deutsch's actions had, in fact, "created the perception of a [conflict of interest] and failed to cooperate fully with the investigation," even if the Company predictably found that Deutsch had not violated any laws or engaged in illegal activity. ECF 34-4 – Pg 97 (investigator's memorandum finding that Deutsch accepted a gift from

12

Gilot Capital Partners); ECF 40 – Pgs 23-26 (¶¶ 71, 74-75, 80) (detailing the substantiated allegations from Marullo's complaint); ECF 47 – Pgs 57-61 (¶¶ 322-328) (same). Rivian also would not share any details of the investigation findings with Plaintiff. ECF 47 – Pg 114 (¶¶ 450-451) (Bensaid refusing to discuss the investigation into Deutsch with Marullo even after its completion) .

Deutsch accordingly was terminated by Bensaid on January 7, 2022. ECF 40 – Pg 23 (¶¶ 72-73). Bensaid terminated Marullo just three weeks later on January 28, 2022. ECF 40 – Pg 5 (¶ 15). Bensaid's pronouncements regarding Marullo and his performance are disputed and tainted by Deutsch's and Bensaid's retaliatory animus. Bensaid admitted frustration with Marullo's complaints and his distaste for HR processes and investigations were confirmed by other witnesses. ECF 34-6 – Pgs 13 (43:11-16, 43:22-45:2) (Bensaid planning to fire Marullo since October 2021 based on feedback from Deutsch), 15-16 (53:19-54:10, 54:25-55:9, 56:16-25, 57:11-25), 17 (59:3-5) (Bensaid admits negative perception of Marullo due to his "accusing people that they are unethical"), 21 (74:14-19, 74:25-75:3) (Bensaid found Marullo's complaints disruptive); ECF 34-7 – Pg 12 (163:9-23); ECF 40 – Pgs 55-56 (response to ¶ 171) (Bensaid trying to speed up HR's investigation); ECF 47 – Pg 81 (¶ 373).

The investigation's conclusions showed that Marullo's belief that Deutsch was engaged in improper conduct with and receiving kickbacks or inappropriate benefits from vendors was reasonable and his complaints were understood to relate

13

to misrepresentations by Deutsch, even by the investigators. ECF 40 – Pgs 25-26 (¶ 80); ECF 34-4 – Pgs 58, 61, (223:1-12, 237:15-20); ECF 41-9 – Pg 3 (November 30, 2021 investigatory interview notes for Johnny Deutsch including questions to Deutsch on receiving things of value from vendors or capital firms); ECF 34-8 – Pg 18 (65:17-22). Marullo's complaints regarding Deutsch's conduct were understood to implicate fraud on the Company, as acknowledged by multiple witnesses. ECF 40 – Pg 23 (¶ 73); ECF 34-6 – Pgs 18, 23 (62:10-13, 62:23-63:8, 84:8-15); ECF 41-9 – Pg 4 (Deutsch agreed his vendor relationships could be "perceived as a conflict of interest" and "would be problematic").[2]

Marullo also reported to the Company's investigator examples of Deutsch's conduct in directing employees (also presumably via phone and email—the "wires" most frequently implicated in wire fraud) to work on vendors' products for them in order to "build their product and then they take it public," which obviously was not for the benefit of Rivian, indicating that Rivian employees were doing work for

---

[2]     Common signs a manager is receiving kickbacks include lack of a competitive bidding process, lack of appropriate supervision over purchasing, relationships with vendors that seem too friendly, and management pressure on employees to use specific vendors—all of which were observed, reported and alleged by Marullo. See https://www.investopedia.com/terms/k/kickback.asp (last visited June 22, 2025). In his investigatory interview, Marullo listed at least five companies Deutsch used on a non-competitive sole source basis without getting quotes from other companies, all of which had personal relationships with Deutsch, including Claroty and Amir Preminger. ECF 47 – Pg 53 (¶ 317); ECF 41-4 – Pgs. 4-5 (October 8, 2021 investigatory interview notes for Marullo mentioning another employee also aware of Deutsch's conduct).

Deutsch's favored vendors in a blatant misuse of Company resources being concealed by Deutsch, in addition to forcing Rivian employees to use such specific favored companies on a sole source contract basis.  ECF 34-4 – Pg 60 (232:23-233:13); ECF 34-11 – Pgs 28 (October 8, 2021 investigatory interview notes for Marullo), 31 (Claroty and Armis were paid hundred of thousands of dollars by Rivian "for manufacturing cyber tool"—a highly material amount of money); ECF 47 – Pgs 52-53 (¶ 316).  The record shows the reasonableness and materiality of Marullo's concerns regarding Deutsch's apparent fraud on Rivian, and that Rivian and its investigator understood Marullo was raising substantive concerns regarding kickbacks and similar dishonest, fraudulent conduct by Deutsch in vendor relationships.  ECF 34-4 – Pg 65 (251:6-17); ECF 34-4 – Pg 58 (223:1-12); ECF 34-6 – Pg 11 (36:1-37:6); ECF  41-9 – Pg 3; ECF 47 – Pg 43-44 (¶ 300).

The timeline regarding Marullo's complaints and Defendants' resulting animus and retaliation against him is illustrated by the record: 1) Marullo objects to Deutsch personally in mid-2021 about his fraud on Rivian and dishonesty in vendor relationships; 2) Deutsch begins retaliating against and planning to replace Marullo; 3) Marullo escalates his concerns about Deutsch to HR/Legal in early October 2021 as the retaliation continues; 4) Deutsch presses harder for Marullo's immediate termination and Defendants try to force Marullo into a different job; 5) the investigation finds Deutsch created the appearance of conflicts of interest and

15

Deutsch is fired; 6) Marullo is fired weeks later due to Bensaid's tainted impressions of Marullo from Deutsch and his impatience with Marullo's complaints.

## RELEVANT PROCEDURAL HISTORY

After his termination on January 28, 2022, Marullo filed a timely complaint with OSHA on June 30, 2022. Dkt. 40 at 55-56, 62 (¶¶ 171, 188),   Following OSHA's processing of his complaint, Marullo filed the instant action on February 16, 2023. ECF 1.  On June 25, 2024, Defendants made a motion for summary judgment as to all claims. ECF 34.  The District Court's decision granting summary judgment was entered on March 26, 2025 (ECF 48, 49), and Marullo filed a timely Notice of Appeal on April 25, 2025. ECF 50.

## STANDARD OF REVIEW, ELEMENTS OF SOX CLAIM

A district court's decision on a motion for summary judgment is reviewed on a *de novo* basis. FindWhat Inv. Group v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011).

A genuine dispute of material fact exists foreclosing summary judgment where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 1307 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  "[A] court may not weigh conflicting evidence or make credibility determinations of its own," and must "view all of the evidence in the light most

16

favorable to the nonmoving party and draw all reasonable inferences in that party's favor." FindWhat Inv. Group, 658 F. 3d at 1307.

To show that a *prima facie* case exists to support a SOX whistleblower claim, a plaintiff must point to evidence that reasonably could show that: (1) he engaged in protected activity; (2) the employer knew that he engaged in the protected activity; (3) he suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action. See 29 C.F.R. 1980.103(e)(1)-(2); Gale v. U.S. Dep't of Lab., 384 F. App'x 926, 929 (11th Cir. 2010) (per curiam). If a plaintiff can establish a *prima facie* case, a defendant employer may prevail only if it can prove by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected activity. See Johnson v. Stein Mart, Inc., 440 F. App'x 795, 801 (11th Cir. 2011) (per curiam).

## SUMMARY OF THE ARGUMENT

Marullo was abruptly fired by Bensaid on January 28, 2022, barely a month after the completion of the Company's investigation of his written complaint regarding suspected malfeasance in granting vendor contracts and using Company resources by his former supervisor, Johnny Deutsch ("Deutsch"), who was terminated on January 7, 2022. Marullo had a well-supported belief regarding potential wire fraud by Deutsch in connection with apparently fraudulent dealings with vendors with whom he had personal relationships (from whom he seemed to be

17

receiving items of value), doling out sole source contracts of up to $200,000 and giving those vendors an advantage in competitive bidding processes. Record evidence shows that Marullo had many positive accomplishments and good feedback during his approximately 16 months of work at Rivian, and was never on a performance improvement plan or warning, placing his performance in dispute.

Deutsch admittedly formed a negative impression of Marullo because of his initial verbal complaints to him about his conduct with vendors in mid-2021, and he began to retaliate against Marullo well before Marullo's written October 5, 2021 complaint to Rivian. The Company fired Deutsch in early January 2022 because its investigators found that his conduct had created the appearance of a conflict of interest, showing that Marullo's beliefs about Deutsch were reasonable.

Bensaid's views of Marullo, however, had been tainted by Deutsch's retaliatory criticism and advocacy for Marullo's firing in October 2021. Marullo's complaints were acknowledged as a factor in retaliatory employment decisions leading up to and even as to the firing itself, and there is no clear and convincing, undisputed evidence untainted by Deutsch's and Bensaid's admitted animus that shows Marullo would have been terminated in the absence of his protected complaints.

In dismissing Marullo's claim, the District Court found that Marullo had not engaged in protected activity because his written complaint did not definitively and

18

specifically relate to violations enumerated by SOX (specifically wire fraud), although various aspects of Marullo's complaints were not addressed and incorrect standards were applied to them.  The District Court also made the factual finding that Marullo would have been terminated even in the absence of his protected complaints, despite Bensaid's resolve to terminate Marullo carrying over from Deutsch's animus-tainted criticism of Marullo in October 2021 and Bensaid's own impatience with and fear of being the next target of Marullo's complaints.  The Order's findings relied upon factual inferences in favor of the movants despite genuine, material fact disputes.  Therefore, the District Court's decision granting Defendants-Appellees' motion for summary judgment should be reversed.

## LEGAL ARGUMENT

**I.**      **Plaintiff Made Complaints Protected by SOX**

      **A.**      **Marullo's Protected Complaints Reasonably Related to Suspected Fraudulent Conduct by Deutsch**

An employee who is making a protected complaint under SOX must subjectively (i.e., personally) and objectively "reasonably believe" that the complained-of conduct is a legal violation of the kind contemplated by SOX Section 1514A(a)(1), including several different species of fraud (i.e., mail, wire, bank, or securities fraud, or fraud on shareholders).[3]  See Ronnie v. Office Depot, LLC, 81

---

[3]      The District Court's Order found that Plaintiff's claim was not vitiated by the fact that the alleged unlawful activity by Deutsch occurred a few months before Rivian's initial public offering (IPO), particularly as Marullo's alleged protected

F. 4th 1345, 1350-51 (11th Cir. 2023). In determining what information sufficiently supports a reasonable belief, the Eleventh Circuit has used a "totality of the circumstances" test that looks to the knowledge available to someone in the same circumstances and with the same training and experience as the plaintiff. Id. at 1351.

In Ronnie, the Court of Appeals reviewed an OSHA Administrative Review Board (ARB) decision for whether it was an abuse of discretion and/or arbitrary or capricious. Ronnie, 81 F. 4th at 1350. In upholding the ARB's dismissal of the SOX claim, the Court of Appeals found that the complainant had merely asserted that a sales data error was nefarious in nature and that an attempt to find its cause was a cover-up, with no facts supporting scienter or materiality. Id. at 1352. Importantly, however, the Ronnie court also found that although the complainant "did not identify which SOX provision he believed Office Depot violated . . . the failure to do so is not weighed against him." Id.[4]

---

activity assisting the investigation continued after the IPO. ECF 48 – Pgs 12-13. The District Court also did not find that Marullo lacked a sincere subjective belief in his complaints regarding Deutsch. Id. at 13-14.

[4] The Order stated that export control laws are not included in the list of statues and regulations enumerated by SOX Section 1514A. ECF 48 – Pg 21. However, Plaintiff did not and does not rely upon violations of the export control laws to establish his protected complaint under SOX. Marullo simply also believed export control laws also may have been violated, and not that it was the only unlawful conduct in which Deutsch was engaged. ECF 34-4 – Pgs 28-29 (105:3-109:3); ECF 40 – Pg. 18 (¶¶ 57-59); ECF 47 – Pgs 33-34 (¶¶ 279-280), 36-37 (¶ 287), 38-39 (¶ 291).

In finding Plaintiff did not provide sufficient evidence to support a reasonable belief, however, the District Court found it decisive that Marullo did not allege that Rivian itself made any misstatement or acted with scienter, and that even if Deutsch's conduct could be attributed to Rivian, there was not evidence that a reasonable person would find Deutsch's conduct "violated SOX."  ECF 48 – Pg 21. It is not required that a SOX complaint concern unlawful conduct by the corporate entity, and protected complaints often concern misconduct by individual employees. See infra, Pgs 9-10.

Factors that lend support to a finding of reasonable belief under the totality of the circumstances are whether a wrongdoer is alleged to have acted with "the requisite scienter," whether the conduct was material, a misrepresentation was relied upon, and/or if the conduct caused economic loss.  Ronnie, 81 F. 4th at 1351.  All of these circumstances are present in Marullo's case.  Marullo alleged and objected that Deutsch was: (1) intentionally hiding from Rivian his relationships with his favored vendors and the benefits he was reaping from them (suggesting intentional wrongdoing, scienter), (2) presenting things as though these were the best vendors for the job (showing misstatements/omissions that were relied upon by the Company), and (3) funneling sole source contracts to these personally favored vendors worth up to $200,000 each (showing loss, even apart from work done by Rivian personnel to improve the vendors' products for them, as directed by Deutsch).

21

ECF 47 – Pgs 29 (¶ 270), 38-39 (¶ 291); 52-53 (¶ 316).  Deutsch also withheld information from Rivian's investigators when he was interviewed, showing that he also knew and understood that he his conduct suggested possible wrongdoing and/or a conflict of interest in his dealings with third parties.  ECF 34-4 – Pg 64 (248:8-22), 97 (Deutsch lying to Rivian investigator about involvement with capital venture firms);  ECF 40 – Pgs 25-26 (¶ 80); ECF 47 – Pgs 45 (¶ 305), 59 (¶ 325).

Marullo testified that Deutsch's conduct with vendors was fraudulent because "it was not in the best interest of Rivian and that it was . . . basically awarding contracts that [Deutsch] subsequently got kickbacks and bribes for."  Dkt. 34-4 – Pg 28 (105:8-12).  This circumstantial evidence is further supported by the investigatory finding that Deutsch had, in fact performed work for Gilot Capital as a Security Advisor (and then lied about his involvement with Gilot when asked about it during the investigation into Marullo's complaint), received a gift from a third party connection that he had not disclosed to Rivian worth between $180-$276, and improperly contracted his friend Amir Preminger and Preminger's company, Claroty.  ECF 40 – Pgs 25-26 (¶ 80); ECF 47 – Pg 59 (¶ 325).  Rivian also fully understood that Marullo's complaints concerned kickbacks, which would have been carried out via wire fraud (phone calls, emails, electronic transfers) in conferring the contracts and payments on the vendors, etc.  See ECF 34-13 – Pg 4 (¶17) (declaration

22

of investigator confirming Marullo asked whether the partial substantiation of his complaints meant Deutsch had in fact received kickbacks).

The District Court's reference to Marullo saying that he did not have specific evidence of Deutsch getting a kickback or bribe overlooks other facts that support his belief.  ECF 48 – Pg 17, citing ECF 34-4 – Pgs 29, 33; ECF 40 – Pgs 33-34 (¶ 109).  Indeed, the District Court noted that Marullo "disputes the overall contention that he did not have any evidence that Deutsch received any bribes or kickbacks by vendors," and Plaintiff cited the Company's finding that Deutsch was in fact found to have received something of value due to his inappropriate conflict of interest conduct. ECF 48 – Pg 17 (n.5), citing Dkt. 40 at ¶ 150.

**B.     Plaintiff's Complaint Identified Fraud as the Basis for Coverage of His Protected Activity Under SOX**

In Plaintiff's District Court-filed Complaint, Marullo's belief that the conduct of Deutsch was fraudulent is alleged repeatedly.  ECF 1 – Pgs 1-2 (¶¶ 2 ("Marullo observed and objected to various practices by . . . Deutsch, that he believed were fraudulent and primarily intended to benefit Deutsch rather than Rivian"), 3 ("deceptive practices"), 4 (Marullo reported to HR "unethical business practices involving improper personal relationships" with vendors after Deutsch retaliated for his earlier complaints)), 12 (¶ 52 ("unethical, fraudulent conduct . . . by his manager which had major implications for the Company's overall security")), 14 (¶¶ 62 (**"Marullo feared . . . contractors were being retained and paid . . . under false,**

23

**fraudulent pretenses**") (emphasis added), 63 (Marullo believed Deutsch's conduct was "fraudulent conduct against Rivian")), 18 (¶ 76 (Marullo told investigators Deutsch was "engaging in fraud")), 22 (¶ 95 (Marullo asked whether Deutsch's termination meant his defrauding of the Company was substantiated)), 25 (¶ 107 (Marullo surprised by further retaliation after Deutsch's firing, seemingly due to fraudulent practices he had reported)), 27-28 (¶ 116 (Plaintiff's complaints concerned "fraud by a member of Company management [that implicated] **various species of fraud and fraudulent activity and misrepresentation, [and] activities which threatened the interests of and violated obligations to Rivian's shareholders** …") (emphasis added)). The District Court conceded that the Complaint did allege "suspected . . . fraud by a member of Company management [and] conflicts of interest . . . which implicate various species of fraud and fraudulent activity and misrepresentations, [and] activities which threatened the interests of and violated obligations to Rivian's shareholders." ECF 48 – Pgs 7-8.

Despite the allegations expressly referencing fraud, misrepresentations and misleading conduct by Deutsch, and even shareholders' interests, the District Court found that Plaintiff's complaints could not be tied to wire fraud as a "new argument," and despite the lack of any motion to dismiss did not allot Plaintiff the opportunity to amend the Complaint. The District Court cited a case that found a plaintiff's claim that a complaint related to bank fraud was to be disregarded because it did not appear

24

in that plaintiff's <u>amended</u> complaint or deposition (whereas Marullo repeatedly attributed his complaints to Deutsch's fraudulent dealings and was not permitted to amend his complaint before dismissal).  ECF 48 – Pg 15; <u>Riddle v. First Tenn. Bank, Nat'l Ass'n</u>, 497 Fed. App'x 588, 594-95 (6th Cir. 2012).  A sworn declaration by a defense witness that he did not believe that Marullo was reporting shareholder fraud (ECF 34-13 – Pg 4 (¶ 19); ECF 48 – Pg 21-22, citing ECF 40 – Pg 48 (¶ 152)), does not support a legal conclusion as to a reasonable belief. Rivian plainly understood that Marullo was complaining about fraudulent conduct by Deutsch with third parties (e.g., kickbacks, bribes, and deriving personal financial benefits from business relationships that were entered into on Rivian's behalf) that would fall within species of fraud such as wire/mail fraud and bank fraud given the communications and payments involved between Deutsch, the third party vendors, and Rivian.

> **C.    Protected Complaints Are Not Required to "Definitively and Specifically" Relate to Enumerated Laws Under SOX, or to Allege Wrongdoing by the Company Itself—Kickbacks and the Like Are Fraud, Including Under SOX**

A complaint that supports a SOX claim is not required to state "the specific provision of § 1514A" that the plaintiff alleges the conduct violates, and a plaintiff "will not be penalized for failing to identify the specific SOX provision at issue." <u>Ronnie</u>, 81 F. 4th at 1351-2 ("In adopting the totality of the circumstances test, we also note that [the] employee need not "definitively and specifically" prove each

25

element of fraud, he must make more than a conclusory allegation."), citing Nielsen v. AECOM Tech. Corp., 762 F.3d 214, 223-224 (2d Cir. 2014) (deciding motion to dismiss: "an alleged whistleblowing employee's communication need not "definitively and specifically" related to one of the listed categories of fraud . . . in § 1514A . . . [but must] plausibly plead that the plaintiff engaged in protected activity").

In stating that a covered complaint must allege facts that "definitively and specifically implicate one of the six specific types of fraud," the District Court seemingly held Plaintiff to a standard higher than the one adopted by the Court of Appeals. ECF 48 – Pg 16. Although the District Court quoted a Sixth Circuit opinion stating that "an employee's complaint must definitively and specifically relate to one of the six enumerated categories found in 18 U.S.C. § 1514A," seemingly analyzing the claim on that basis and holding Plaintiff to that standard, the Sixth Circuit more recently expressly rejected that standard. ECF 48 – Pg 14, quoting Riddle v. First Tenn. Bank, Nat'l Ass'n, 497 F. App'x 588, 595 (6th Cir. 2012); but see Rhinehimer v. U.S. Bancorp Invs., Inc., 787 F.3d 797, 806 (6th Cir. 2015) (expressly rejecting standard used in Riddle). The Northern District of Georgia has recognized Rhinehimer's rejection of the "definitively and specifically" standard. See Slawin v. Bank of Am. Merch. Servs., 491 F. Supp. 3d 1334, 1349 (N.D. Ga. 2020) ("Courts have rejected a requirement that a plaintiff's allegations

26

must 'definitively and specifically' relate to one of the enumerated categories of protection.").

The District Court based its ruling on a requirement that, "Most importantly, the Eleventh Circuit has explicitly" found that "§ 1514A(a)(1) requires an employee to demonstrate both a subjective belief and an objectively reasonable belief that *the company's* conduct violated a law listed in that section." ECF 48 – Pg 19, quoting (emphasis added) Gale v. U.S. Dep't of Lab., 384 F. App'x 926, 929-930 (11th Cir. 2010) (per curiam). The District Court further stated that, "At no point does Marullo allege that any of *Rivian's* actions were fraudulent or illegal." ECF 48 – Pg 20 (emphasis added). However, the District Court misapplied Gale, which reviewed an ARB decision regarding a case where the employee was complaining about a company's conduct and admitted he did not believe it was engaged in illegal activity or fraud, and a rogue manager's conduct was not at issue. Gale, 384 F. App'x at 929-30.

SOX plaintiffs are not required to complain about conduct sanctioned by the company itself to make a protected complaint. Courts have found that reporting fraudulent activity by another employee may be protected activity under SOX, even if not known or in service to the company. See, e.g., Lawson v. FMR LLC, 571 U.S. 429, 435 (2014) (SOX covers "**any conduct** which the employee reasonably believes constitutes [the covered violations]," quoting §806, 116 Stat. 802 (emphasis

27

added)); Reyna v. ConAgra Foods, Inc., 506 F. Supp. 2d 1363, 1383 (M.D. Ga. 2007) (reporting that an employee perpetrated insurance fraud by requesting that his wife and son be added to the company insurance when they were his sister and nephew and forging of a social security card by other employees both constituted protected activity); Thomas v. Tyco Int'l Mgmt. Co., LLC, 262 F. Supp. 3d 1328, 1336 (S.D. Fla. 2017) (report that an accountant employee was unqualified and dishonest constituted protected activity for SOX retaliation claim).

Kickbacks and improper contractor relationships involving conflicts of interest have been recognized, including in a criminal context, to constitute fraud. The case of Collins v. Beazer Homes USA, Inc., 334 F. Supp. 2d 1365 (N.D. Ga. 2004), is analogous and instructive. In Collins, the plaintiff began having conflicts with her manager and coworker soon after starting at the company and disclosed that the company was using a third-party agency because of a personal relationship and that overpayments were made, along with allegations of kickbacks. 334 F. Supp. 2d at 1376-77. The plaintiff's complaints were found protected by SOX, particularly in light of the statute's broad remedial purpose. Id. at 1377.

District courts also have ruled that reporting fraud and illegal kickbacks constitute "plausible allegations of an objectively reasonable belief of shareholder fraud." Burns v. Medtronic, Inc., No. 8:15 Civ. 2330 (EAK), 2016 WL 3769369, at *4 (M.D. Fla. July 12, 2016). Other jurisdictions have recognized that kickbacks

28

would fall under SOX.  C.f. Colesanti v. Dickinson, No. 18 Civ. 491 (WES), 2019 WL 4043957, at *11 (D.R.I. July 19, 2019), report and recommendation adopted sub nom.  Colesanti v. Dickinson, No. CV 18 Civ. 491 (WES), 2019 WL 4039529 (D.R.I. Aug. 27, 2019) (in ruling plaintiff not covered by SOX, court noted the complaint did not allege plaintiff "ever uncovered conduct involving kickbacks that amounted to actual improprieties related to the fraud-prevention purposes of SOX") (citation omitted).

Here, although Deutsch had the authority to select vendors with limited review on contracts under $200,000, he could not lawfully enter into contracts from which he would benefit personally while selecting vendors who were not best suited to Rivian's needs (while supposedly selecting them based on legitimate factors). ECF 40 – Pg 27 (¶ 84) (Deutsch had authority to award sole source contracts under $200,000); ECF 34-4 – Pgs 22-23 (81:9-82:7) (same).  The awarding of contracts worth many thousands of dollars on an improper basis certainly would involve misrepresentations/omissions by Deutsch regarding the suitability of the vendors as well as Deutsch's knowledge of his wrongdoing (i.e., scienter), would be done with the aid of electronic communications and transactions, and would be more than material to Rivian's finances and operations.  Whether the vendors were paid "more than they were owed" under the contracts or not is not material where the contracts were awarded based on improper motivations and disloyalty in the first place.  ECF

29

48 – Pg 19 (finding lack of allegation of overpayment to weigh in favor of dismissal); ECF 40 – Pgs 27-29 (¶¶ 87-96) (Deutsch pushing Claroty, a vendor he had personal connections with, to Marullo over other vendors that were better choices for an RFP, Marullo objecting to Deutsch's behavior).

The District Court did not acknowledge that these contracts were awarded on a false basis, with Deutsch failing to disclose information that Rivian would have found material (i.e., his personal relationships and putting his thumb on the scale for those vendors). Indeed, Deutsch tried to confer an improper advantage (sharing confidential information received from other companies) to those personally favored vendors even in the competitive process for contracts worth more than $200,000 (amply material to Rivian), as Marullo reported in his complaints to Deutsch and Rivian. ECF 47 – Pg 30 (¶ 272). In addition, Marullo's belief that Deutsch's conduct suggested that Deutsch was improperly benefiting from these vendor relationships was supported by Rivian's investigation. ECF 34-4 – Pg 97; ECF 40 – Pgs 23-26 (¶¶ 71, 74-75, 80) (detailing the partially substantiated allegations from Marullo's complaint, including Deutsch's creation of the appearance of a conflict of interest and benefiting from third party relationships outside Rivian); ECF 47 – Pgs 57-61 (¶¶ 322-328) (same).

Wire fraud is one of the types of fraud covered by SOX, as defined under 18 U.S.C. § 1343. Plaintiff testified to communications between Deutsch and certain

30

vendors that appeared to be for fraudulent purposes benefiting Deutsch at the expense of Rivian, which were carried out via email and telephone—i.e., by wire. 18 U.S.C. § 1343 ("any scheme or artifice to defraud . . . causes to be transmitted by means of wire . . . any writings . . . or sounds for the purpose of executing such scheme or artifice").

In United States v. Bradley, 644 F.3d 1213 (11th Cir. 2011), this Court stated that mail and wire fraud are "analytically identical save for the method of execution," and "require that a person (1) intentionally participates in a scheme or artifice to defraud another of money or property, and (2) uses or 'causes' the use of the mails or wires for the purpose of executing the scheme or artifice." 644 F.3d at 1238-39 (quoting United States v. Ward, 486 F.3d 1212, 1222 (11th Cir. 2007) (citations omitted)).[5]   A "scheme or artifice" must be undergirded by a "material representation, or the omission or concealment of a material fact calculated to deceive another out of money or property." Bradley, 644 F.3d at 1238-39, quoting United States v. Maxwell, 579 F.3d 1282, 1299 (11th Cir. 2009).

Marullo objected to Deutsch's conduct and reported to Rivian that Deutsch was granting contracts to and giving advantages to vendors in competitive processes

---

[5]   The second element of mail/wire fraud is proven by showing the person caused or used the mails or wires "in the ordinary course of business, or where such use can reasonably be foreseen." Bradley, 644 F.3d at 1239, quoting Ward, 486 F.3d at 1222 (citations omitted).

31

not because they were the best for the job, but because of Deutsch's personal relationship with them and apparent personal benefit. ECF 40 – Pgs 20-22 (¶¶ 65, 67), 48 (¶ 149); ECF 254 – Pgs 21 (¶ 254), 23 (¶ 258).  Marullo also reported that Deutsch was having Rivian employees do work for the vendors for their benefit. ECF 47 – Pgs 52-53 (¶ 316).

Although Deutsch could grant contracts of less than $200,000 to vendors on his own authority, that does not mean that he was exercising his authority appropriately and not defrauding Rivian as he did it.  See Maxwell, 579 F.3d at 1301 (rejecting defense argument that defendant's practices were consistent with industry standards, which could be disputed and disregarded by the jury).

Despite these allegations, the District Court drew a factual conclusion and unfavorable inference and found that because Marullo did not contend that Deutsch was directly trying to "steal money from Rivian" or had not alleged a misrepresentation by Deutsch "tailored to perpetuate fraud," the conduct complained of by Marullo could not constitute wire fraud.  ECF 48 – Pg 16.  However, Deutsch's conduct, as alleged by Marullo, matches up with the misleading actions of wrongdoers in other kickback and overcharging cases under SOX (cited above), and to the acts of the criminal defendant in Maxwell, who signed up a vendor to contracts on false pretenses and scolded employees who raised questions about whether the contracts were in the best interests of the company.  Maxwell, 579 F.3d at 1299-

32

1300.  Such conduct by necessity misleads the company and officials who the wrongdoer is working for and harms the economic interests and stability of the company.  See United States v. Hasson, 333 F.3d 1264, 1270 (11th Cir. 2003) ("A material misrepresentation is one having a natural tendency to influence, or capable of influencing, the decision maker to whom it is addressed." (citation omitted)).

Marullo did complain that Deutsch was seeking financial benefit at the expense of Rivian and its interests, and that he was misrepresenting the basis for the vendors' contracts and work for those vendors by Rivian employees in order to obtain benefits for himself and his friends, rather than Rivian.  ECF 40 – Pgs 18-19 (¶¶57-59) (Marullo's October 5, 2021 complaint about Deutsch's unethical conduct), 34 (response to ¶ 111), 48 (¶¶ 149-150) (Marullo alleging Deutsch received bribes or kickbacks, investigation finding Deutsch received things of value); ECF 47 – Pgs 22-25 (¶¶ 256-261) (Marullo's voicing objections to Deutsch favoring particular vendors, suggesting that Deutsch was benefiting financially through kickbacks or bribes),  31-32 (¶¶ 274-278) (verbal complaints to Deutsch about bias towards vendors Deutsch had personal connections to), 106-107 (¶¶ 432-434) (Marullo's complaints understood to allege bribes, kickbacks), 112 (¶ 443) (same).  In addition, Marullo expressly contended that Deutsch was omitting and keeping hidden from Rivian the facts regarding his relationships with the vendors at issue so that he could derive improper financial benefits for himself and the vendors

33

(to the detriment of Rivian). ECF 34-4 – Pg 32 (118:7-119:17); ECF 40 – Pg 22 (response to ¶ 67).

Marullo's complaints regarding his supervisor falsely contracting with select cybersecurity vendors for the benefit of himself and <u>improperly using Company resources to benefit those vendors</u> depended upon misrepresentations and concealment of his motives and how the Company's financial and personnel resources were being used, and had negative implications for Rivian's finances and operations. <u>See</u>, <u>e.g.</u>, <u>Thomas v. Tyco Intl. Mgmt. Co., LLC</u>, 262 F. Supp. 2d 1328, 1335-36 (S.D. Fla. 2017) (covered SOX complaint regarding hiring of person without sufficient accounting credentials implicated and created weakness in internal financial reporting controls).

The issue of whether a misrepresentation is material is a fact issue typically left for the jury and should only be decided by a court if immateriality is so clear that reasonable minds could not disagree. <u>See MAZ Partners LP v. First Choice Healthcare Sols., Inc.</u>, No. 19 Civ. 619 (LRH), 2019 WL 5394011, at *8–9 (M.D. Fla. Oct. 16, 2019), <u>report and recommendation adopted,</u> No. 19 Civ. 619 (PGB), 2020 WL 1072582 (M.D. Fla. Feb. 14, 2020) (not making a ruling on materiality at the motion to dismiss stage). Therefore, the issue of whether SOX protected Marullo's activity—including his complaints to Deutsch and Rivian, as well as his participation in the investigation and early January 2022 communications regarding

34

his complaints and concerns to the Company—is disputed and should not be decided as a matter of law.

## II. WHETHER MARULLO WOULD HAVE BEEN TERMINATED IN JANUARY 2022 ABSENT HIS PROTECTED ACTIVITY IS UNCERTAIN AND DISPUTED, NOT "CLEAR AND CONVINCING"—ANIMUS BY SUPERVISORS TAINTED THE TERMINATION, WHICH WAS DISCUSSED IN OCTOBER 2021 BUT CARRIED OUT IN JANUARY 2022 SOON AFTER THE <u>INVESTIGATION</u>

"The clear and convincing evidence standard is more demanding than a preponderance standard and requires proof that the employer's assertions are highly probable." Highsmith v. CSN Transp., Inc., 5:22 Civ. 52 (LGW), 2024 WL 3164660, at *9 (S.D. Ga. June 24, 2024),[6] quoting Pan Am Rys., Inc. v. U.S. Dep't of Lab., 855 F.3d 29, 36 n.6 (1st Cir. 2017). "For employers, this is a tough standard, and not by accident." Highsmith, 2024 WL 3164660, at *9, quoting Stone & Webster Eng'g Corp. v. Herman, 115 F.3d 1568, 1572 (11th Cir. 1997).

The District Court seemingly granted that Marullo's complaints were a contributing factor in his termination, and made the factual finding that Defendants showed "by clear and convincing evidence that the employer would have taken the same personnel action in the absence of the protected activity." ECF 48 – Pgs 22-

---

[6] Although Highsmith is a case under the Federal Railroad Safety Act (FRSA), that statute uses the "same contributing factor framework that applies to the Sarbanes-Oxley Act," making case law on that aspect binding under both statutes. Highsmith, 2024 WL 3164660, at n.1.

24 (quoting <u>Thomas v. Tyco Int'l Mgmt. Co.</u>, 416 F. Supp. 3d 1340, 1358 (S.D. Fla. 2019) (quotation omitted)).  The District Court factually found that an "uncontested timeline" showed that "the wheels were in motion to terminate Marullo *before* he submitted his complaint," and so *Rivian* (as opposed to, crucially, Deutsch—which was the case in reality until he turned Bensaid against Marullo, too) purportedly "was looking to terminate Marullo before he engaged in what he considers to be protected activity."  ECF 48 – Pg 23, emphasis in quoted original.  The District Court also cited <u>Del Signore v. Nokia of Am. Corp.</u>, 672 F. Supp. 3d 560, 569 (N.D. Ill. 2023), which is inapplicable because in that case the adverse actions predated *all* complaints and protected activities by the plaintiff.

The District Court based its finding on Deutsch starting to write a memorandum criticizing Marullo on October 2, 2021 and making a request or <u>recommendation</u> on October 4, 2021 that Rivian <u>start</u> a search to replace Marullo <u>at some point</u> in the future, just before Marullo's formal written complaint was lodged with HR/Legal on October 5, 2021.  ECF 40 – Pgs 8-10 (¶¶ 30-32).  The District Court, however, did not address the role of Deutsch's animus regarding and retaliation for Marullo's earlier mid-2021 complaints to him, nor the evidence of Bensaid's own animus and Defendants' further retaliation against Marullo after his written complaint. <u>See</u> <u>Boyland v. Corrections Corp. of America</u>, 390 Fed. Appx. 973, 974-75 (11th Cir. 2010) ("intervening retaliatory acts commenced shortly after

36

the plaintiff engaged in a protected activity" may bridge the gap and support causation).

Marullo's termination was not inevitable—there was no plant closing or layoff or other event that meant his job was going away, nor was he ever put on a performance improvement plan or other warning, as admitted by defense witnesses. ECF 34-6 – Pg 16 (54:25-55:9, 56:16-25, 57:11-25); ECF 34-10 – Pg 7 (21:5-14); ECF 34-6 – Pg 8 (no performance plan); ECF 34-8 – Pgs 29-30 (109:9-15) (same); ECF 47 – Pgs 8-9 (¶¶ 220-223). There was no pre-October 5, 2021 edict or urgent plan to terminate Marullo, and Bensaid would not have had to follow it even if there was one. To the extent the District Court believed that Marullo's termination was set from early October 2021, that would only tie the termination directly to Deutsch and his retaliatory animus against Marullo, which was reported in writing on October 5, 2021 and demonstrated by other evidence as well.

The District Court did not deny or discuss Defendants' retaliatory animus or its contribution to the decision to terminate Marullo. ECF 48 – Pg 23. Bensaid's negative perceptions of Marullo were planted by Deutsch in October and November 2021, before Bensaid had any other basis for evaluating Marullo's performance. ECF 40 – Pgs 11-12 (response to ¶ 35, ¶ 36), 49 (¶ 153), 55-58 (¶¶ 171, 172, 173); ECF 47 – Pgs 10 (¶ 226), 79 (¶ 368), 91 (¶ 397); ECF 34-6 – Pg 13 (43:11-16, 43:22-45:2); ECF 34-7 – Pg 12 (163:9-23).

37

Bensaid admitted that Deutsch largely set his belief that Marullo should be terminated, and that the final termination decision was postponed until after the investigation was done. ECF 34-6 – Pgs 13 (45:3-13), 14 (48:15-20), 15 (51:5-11), 18 (64:3-18) (Bensaid told Deutsch of need to avoid appearance of retaliation in holding off on terminating Marullo); ECF 40 – Pg 12 (¶ 36). Therefore, Deutsch's retaliatory criticism and push to replace Marullo throughout October 2021, including after Marullo filed his written complaint, influenced and poisoned Bensaid against Marullo and tainted his decision to terminate (along with Bensaid's admitted strong frustration about Marullo's complaints).[7]

---

[7]    The District Court did not discuss or dispute that Deutsch and Bensaid were aware of Marullo's complaints for purposes of knowing about them before his January 2022 termination. Emails, testimony and other evidence establish that Bensaid and Deutsch were well aware of Marullo's written complaint about Deutsch soon after it was lodged with Rivian on October 5, 2021. ECF 47 – Pgs 44 (¶ 301), 92-93 (¶ 400); ECF 34-5 – Pg 209. A supervisor's awareness of a complaint also can be established or disputed through circumstantial evidence supporting an inference of awareness. See Hampton v. Amediys Georgia, LLC, 2023 WL 1521983, at *3 (11th Cir. Jan. 11, 2023); Morris v. Broadwing Comm'ns, 2006 WL 964487, at *10 (D. Ariz. April 11, 2006) (Title VII retaliation case, summary judgment denied; highly circumstantial evidence enough to create dispute as to decisionmaker knowledge because several people knew plaintiff had instigated an investigation). However, the District Court unfortunately did not acknowledge that Deutsch also was aware of Marullo's initial verbal complaints to him personally in mid-2021 before his retaliatory performance criticism and badmouthing of Marullo to Bensaid and HR, and his request to replace to Marullo in early October 2021. ECF 48 – Pgs 23-24 ("Rivian was looking to terminate Marullo before he engaged in what he considers to be protected activity.").

An employer who bases a decision to terminate a plaintiff on information provided by a supervisor motivated by unlawful animus may still be liable even if the employer acted in good faith.  See Highsmith, 2024 WL 3164660, at *7 (denying summary judgment on FRSA whistleblower retaliation claim), citing Staub v. Proctor Hosp., 562 U.S. 411, 422 (2011) (cat's paw theory of liability).

Courts recognize that the influence of a biased third party can taint and render an employment decision retaliatory, even where the ultimate decisionmaker did not harbor animus themselves against the plaintiff employee.  See Lockheed Martin Corp. v. Admin. Rev. Bd., U.S. Dept. of Labor, 717 F.3d 1121, 1136-38 (10th Cir. 2013) (finding that animus from ethics complaint from May 2006 could "poison" new supervisors' opinion of employee even if they did not know of earlier complaint and impact January 2008 departure from company, 20 months later); Jones v. City of Heflin, 207 F. Supp. 3d 1255, 1272-73 (N.D. Ala. 2016) (employer may be held liable for animus of a supervisor who did not make the ultimate employment decision where decisionmaker followed the biased recommendation without independent investigation of complaint against employee); Smith v. Chicago Bridge & Iron Co., N.V., 2017 WL 2619342 (S.D. Tex. June 16, 2017).

"[T]he impermissible bias of a single individual at any stage of the [decision-making] process may taint the ultimate employment decision . . . This is true even absent evidence of illegitimate bias on the part of the ultimate decision maker, so

39

long as the individual shown to have the impermissible bias played a meaningful role in the [decision-making] process." Bickerstaff v. Vassar Coll., 196 F.3d 435, 450 (2d Cir. 1999), as amended on denial of reh'g (Dec. 22, 1999) (internal citations omitted).

Evidence shows that Bensaid and the Company recognized that terminating Marullo after his written complaint would indicate clear retaliation, and therefore waited (not so long) to terminate Marullo until they felt they could argue the appearance of retaliation was not as strong. ECF 40 – Pgs 14-15 (¶¶ 43, 44); ECF 47 – Pg 79 (¶ 368). As further evidence of Defendants' motivation to silence and retaliate against Marullo, defense witnesses admitted that Marullo's mention of Duetsch's "corruption" in a January 4, 2022 email contributed to his termination later that month. ECF 34-8 – Pg 30 (110:23-111:24); ECF 34-4 – Pg 102; ECF 40 – Pgs 45-48 (¶¶ 144-148); ECF 47 – Pg 111 (¶ 441).

Evidence shows Bensaid harbored his own retaliatory animus against Marullo. For example, Bensaid and Rousteau of HR had a discussion in early January 2022 specifically about finding a pretext for terminating Marullo sooner than the end of an ongoing investigation, precisely because of his complaints, which Rousteau was "exhausted" by and Bensaid found "toxic." ECF 34-7 – Pgs 13 (166:13-167:11), 42 (January 11, 2022 text messages: Rousteau would "do [her] damn[ed]est to push for closure of the case before then [date of Bensaid's one-on-

one meeting with Marullo] as I fear we're now headed towards you becoming the next subject of complaint [sad face emoji]," with Bensaid agreeing); ECF 40 – Pgs 55-56 (response to ¶ 171).

The factual record renders it unavoidable that there is a reasonable factual dispute as to whether Marullo would have been terminated even without his protected activity.  Defendants fall far short of making a "clear and convincing" showing that the termination would have happened absent all or any of Marullo's complaints.  The timeline illustrates how Deutsch's animus against Marullo tainted Bensaid's termination decision, and Bensaid's own animus related to Marullo's complaints shows that the termination decision was not inevitable (Bensaid was not required to terminate Marullo, after all, but rather chose to do so even after Marullo's complaint was "partially substantiated"). ECF 40 – Pgs 11-12 (¶¶ 35-36) (Deutsch giving Bensaid negative impression of Marullo, spreading retaliatory animus), 56-58 (responses to ¶¶ 171-173) (detailing Bensaid's animus against Marullo); ECF 47 – Pg 114 (¶ 449).

The case of Kuba v. Disney Financial Services, LLC, 623 F. Supp. 3d 1290 (M.D. Fla. 2022), also is instructive and analogous. In Kuba, the court found that an employer's plans to fire the plaintiff were delayed by a medical leave, and therefore the chain of causation was not broken despite the passage of approximately nine months, particularly where the plaintiff reaffirmed her earlier complaint with a

41

second email. 623 F. Supp. 3d at 1303-04 ("A reasonable jury might conclude, for example, that [plaintiff's] second email . . . demonstrated a dogged commitment to the issue that [defendant] was unwilling to humor further."). In Collins, the court found that the employer's proffered termination reason that plaintiff showed "discontent with her job" and "extreme unhappiness" along with other criticisms were not sufficient to find that termination would inevitably have occurred, and that other complaints by the plaintiff not covered by SOX could not serve as separate causes for termination as a matter of law. Collins, 334 F. Supp. 2d at 1380-81. See also Sequeira v. KB Home, 716 F. Supp. 2d 539, 556 (S.D. Tex. 2009) (claimed "communication problems" with plaintiff "might not have arisen" if not for plaintiff's protected activity).

These facts strongly echo the circumstances present in Marullo's case, where Bensaid and even Rousteau in HR were threatened and frustrated by his retaliation complaints regarding Deutsch and others (including Rousteau, who had pressed Marullo to take a different job, and both speculated Bensaid could be next). ECF 34-7 – Pgs 13 (166:13-167:11), 42; ECF 40 – Pgs 55-56 (¶ 171). Messages from Rousteau of HR to Bensaid in early January 2022 blatantly display their animus against Marullo for his complaints, even before the investigation of a January 4, 2022 email to a coworker was completed. ECF 34-7 – Pgs 13 (166:13-167:11), 42 (final investigation completed the day before Marullo was fired).

42

Marullo was terminated less than a month after his January 4, 2022 email reiterating his allegation regarding corruption on the team regarding procurement, and around six weeks (including the Christmas/New Year holiday season) after the investigation of his initial complaint was complete. ECF 34-11 – Pg 49. This further supports an inference of causation based on temporal proximity and undermining any claim of "clear and convincing" evidence that termination would have occurred absent his complaints.

Marullo's complaints led to swift retaliation and a blatant, documented campaign by Defendants to force him out of his job, and the eventual chosen pretext of Marullo's January 4, 2022 email to a colleague citing "corruption" on the team (which referred to his earlier complaint about Deutsch) only confirms and further supports Defendants' retaliatory motivations and impulses. ECF 40 – Pgs 46-47 (¶144).

Therefore, summary judgment should be denied, as the District Court's findings depended upon impermissible negative factual inferences and weighing of the evidence against Plaintiff in favor of the movant Defendants. Fact-intensive issues of fact are present regarding the protected nature of Plaintiff's complaints to Deutsch and Rivian, as well as whether Marullo would have been terminated even absent his complaints, and other reasons cited by the District Court.

43

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellant Marullo respectfully requests that this Court reverse the District Court's decision granting summary judgment.

Dated: June 25, 2025

New York, New York

Respectfully submitted,
**WIGDOR LLP**

By: /s/ *Lawrence M. Pearson*
      Lawrence M. Pearson

85 Fifth Avenue
New York, New York 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
lpearson@wigdorlaw.com

*Counsel for Plaintiff-Appellant*

44

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) as the brief contains 10,491 words, excluding those parts exempted by 11th Cir. Local R. 32-4.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) as this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

By: /s/ *Lawrence M. Pearson*
Lawrence M. Pearson
*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 25th day of July, 2025, I caused this Brief to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

By: /s/ *Lawrence M. Pearson*
Lawrence M. Pearson
*Counsel for Plaintiff-Appellant*